Edward M. Hobby; J.
This is a motion by the plaintiff for summary judgment pursuant to CPLR 3212. It raises as its principal consideration the proper means of excluding by contract both implied and express warranties arising during the course of contractual negotiations.
In its complaint the plaintiff seeks to recover from the defendants $25,242.60 representing the balance of the purchase price of certain heating and air-conditioning units after crediting a payment of $2,805 on a purchase price of $28,047.60. There is also a subsidiary claim for attorneys’ fees for the collection of the balance allegedly due.
It appears, without dispute, that on June 20, 1969 at Jamestown, New York, the plaintiff and the defendants signed a written instrument under which the plaintiff agreed to sell and the defendants agreed to purchase 84 Temco heating and air-conditioning units. The instrument is made a part of the plaintiff’s complaint. Under the terms of the instrument it was agreed that the sum of $25,242.60 would be “ payable thirty (30) days after notice to the purchasers of the receipt of the units ’ ’ at the plaintiff’s warehouse in Chautauqua County. Plaintiff alleges in its complaint the delivery of all goods and the performance of all terms provided in the written agreement. It also alleges the demand for the alleged balance of $25,242.60 and the refusal of the defendants to pay the same.
The answer of the defendants does not deny the essential elements of the plaintiff’s cause of action. Allegations of the existence and execution of the written instrument for the pur-chase and sale of the units are not denied. Allegations setting forth price of the goods and agreement of the defendants to pay it are not denied. Allegation of the. delivery of the units is admitted. Allegations of the balance due under the contract, demand for payment and the failure and refusal of the defendants to pay are not denied.
On the basis of the pleadings the plaintiff would be entitled to the recovery it seeks from the defendants.
However, the defendants seek to avoid payment of the amount. allegedly owed the plaintiff by setting forth a counterclaim seeking damages from the plaintiff in the amount of $55,776. The allegations of the counterclaim charge that such damages arose *1033 from warranties made by the plaintiff’s officers and agents that the heating and ventilating units “ were ideal for use in a motel and that the units were so constructed as to eliminate pilot outage and operating costs Defendants allege that such warranties were untrue. They allege that the units were subject to numerous breakdowns; were not suitable for the purposes for which the defendants purchased them; that the units were not constructed properly for motel use in that the units caused severe damage to draperies and that the metal plates protecting the pilot light have become warped breaking the seal and causing pilot outage.
Defendants contend that the alleged warranties were made both orally by the plaintiff’s agent and also by written promotional literature furnished the defendants prior to their purchase of the units.
An examination of the written instrument dated June 12,1969 discloses that it is entitled “ Retail Installment Contract ”, that it consists of two printed pages, that it was signed by all defendants and approved by the signature of an authorized representative of the corporate plaintiff.
The instrument contains the following relevant information. First, the material for sale is described as follows:
“ Quantity Make & Type Model Number
84 Torneo 4-Seasons Units 11GH25-1 ”
Appearing in bold print on the front page of the instrument in a separate allotted space is the following statement in reference to disclaimer of warranties: “ Seller makes no warranties, express or implied* of merchantability, fitness or otherwise which extend beyond the description of the appliance herein.”
Immediately under the quoted provision relating to disclaimer of warranties, in a separate allotted space, there appears in large bold print the following:
“ NOTICE TO THE BUYER:
“1. Do not sign this agreement before you read it or if it contains any blank space.
“ 2. You are entitled to a completely filled in copy of this agreement.
“ 3. Under the law, you have the right to pay off in advance the full amount due and under certain conditions to obtain a partial refund of the credit service charge.”
Paragraph numbered 10 appearing on the -second page under a subtitle of “Additional Terms”, provides as follows: *1034 “ 10. This agreement contains the entire agreement between Seller and Buyer and no modification hereof shall be binding upon either party unless in writing and signed by both Seller and Buyer. There are no promises, terms, conditions, or warranties •other than those contained herein. The failure or omission of -Seller to demand or enforce prompt or full compliance with any of the terms or conditions hereof shall not constitute a waiver of any of its rights hereunder.”
The position of the defendants as stated in their brief is as follows : ‘ ‘ The technical information contained in the brochure as well as the oral representations as to efficiency and use of the units must also be read into the contract ”.
In contrast, the plaintiff urges that the written instrument alqlie, devoid of warranties and representations, constitutes the contract between the parties.
The resolution of the issue before this court must start with a determination of what the agreement between the parties was.
Uniform Commercial Code defines “ Agreement ” as follows: “ ‘ Agreement ’ means the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or useage of trade or course of performance as provided in this Act (Sections 1-205 and 2-208).” (Uniform Commercial Code, § 1-201, subd. [3]).
As previously noted, the written instrument contained language purporting to negate the application of warranties express or implied.
Subdivision (2) of section 2-316 of the Uniform Commercial Code provides the manner of negating implied warranties of merchantability and of fitness.
As to an implied warranty of merchantability, it requires that language of exclusion “must mention merchantability and in case of a writing must be conspicuous ”. (Italics added.)
As to implied warranty of fitness, it is provided that language of exclusion “ must be by a writing and conspicuous.” In contrast to disclaimer of1 implied warranty of merchantability there is no requirement that the word “ fitness ” must be mentioned. General language is permitted. This is pointed up by the further provision that: “ language to exclude all implied warranties of fitness is sufficient if it states, for example, that ‘ there are no warranties which extend beyond the description on the face hereof.’ ” (See Uniform Commercial Code, § 2-316, subd. [2]).
The word “conspicuous” is defined in subdivision (10) of section 1-201 of the Uniform Commercial Code as follows: “ ‘ Conspicuous ’: A term or clause is conspicuous when it is *1035 •so written that a reasonable person against whom it is to opérate ought to have noticed it. A printed heading in capitals (as: non-negotiable bill o# lading) is conspicuous. Language in the body of a form is ‘ conspicuous ’ if it is in larger or other contrasting type or color. But in a telegram any stated term is ‘ conspicuous \ Whether a term or clause is ‘ conspicuous ’ or not is for decision by the court. ”
The court finds that the printed portion of the instrument purporting to exclude warranties specifically mentions “ merchantability ”. The court further finds that it is of contrasting type and plainly visible and thus “ conspicuous ” within the meaning of the statute. The written instrument contains a valid exclusion of implied warranties of merchantability and of fitness.
In contrast to the precise statutory requirements for exclusion of implied warranties of merchantability and fitness, section 2-316 of the Uniform Commercial Code does not set forth any requirements to effect a disclaimer of implied warranties other than warranties of merchantability and fitness. Neither does it contain any requirements to effect a disclaimer of express warranties. The negating or limiting of these warranties, however, is mentioned in subdivision (1) of section 2-316 in the following language:
1 ‘ 2-316. Exclusion or Modification of Warranties. (1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this Article or parol or extrinsic evidence (Section 2-202) negation or limitation is inoperative to the extent that such construction is unreasonable.”
The Official Comment to section 2-316 of the Uniform Commercial Code (McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 2-316) indicates that that section is ■ designed to deal with the disclaimer of all warranties express or implied.
“ Purposes:
“ 1. This section is designed principally to deal with those frequent clauses in sales contracts which seek to exclude ‘ all warranties, express or implied.’ It seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to such language when inconsistent with language of express warranty and permitting the exclusion of implied warranties only by conspicuous language or other circumstances which protect the buyer from surprise.”
*1036 The manner and means by which a disclaimer of express warranty and implied warranty, other than of merchantability and fitness are to be effected does not appear to be contained in any statutory provision of the Uniform Commercial Code. However, the Practice Commentary to section 2-202 of the Uniform Commercial Code by Alfred A. Buerger and William J. O’Connor, Jr. deals directly with the matter and suggests appropriate language and the manner of setting the same forth that would accomplish an effective disclaimer of such warranties.
‘ ‘ When the seller wishes to avoid the possibility of admission of evidence of additional terms such as warranties to explain or supplement a written contract for sale he should include in the contract a clause similar to the following:
‘ ‘ THIS WRITING CONTAINS THE ENTIRE AGREEMENT BETWEEN THE BUYER AND THE SELLER. THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, OF MERCHANTABILITY, FITNESS OR OTHERWISE WHICH EXTEND BEYOND THE DESCRIPTION ON THE FACE HEREOF ’ ’.
(McKinney’s Cons. Laws of 1ST. Y., Book 62%, Practice Commentary, Uniform Commercial Code, § 2-202, p. 157.)
It is noted that the bold and enlarged print and the specific reference to “ express ” warranties and to implied warranties, other than of merchantability and fitness (“or otherwise ”) in the suggested form is without statutory requirement. It constitutes only a suggested means of the commentators to effect a disclaimer of these warranties.
■Since a disclaimer of express warranties and implied warranties, other than of merchantability and fitness, are unquestionably valid subject matter of a contract, and since such disclaimers are expressly permitted under the terms of the Uniform Commercial Code and without specific statutory requirements (see Uniform Commercial Code, § 2-316), they need only be clearly stated to be proper contractual covenants.
This court finds that the language of the disclaimer of express warranties and implied warranties, other than of merchantability and fitness, contained in the agreement of June 12, 1969 was legal and proper.
The binding effect of the disclaimer of such warranties, however, is subject to the provisions of section 2-313 of the Uniform Commercial Code. That section deals with the creation of express warranties by the seller during the bargaining process with the buyer and the continuance and the inclusion of such warranties into the agreement between the parties by legal implication. Section 2-313 of the Uniform Commercial Code provides ■as follows:
*1037 “ 2-313. Express Warranties by Affirmation, Promise, Description, Sample.
" (1) Express warranties by the seller are created as follows:
"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
" (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
" (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
" (2) It is not necessary to the creation of an express warranty that the seller use forrilal words such as £ warrant ’ or £ guarantee ’ or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller’s opinion or commendation of the goods does not create a warranty.” (L. 1962, ch. 553, eff. Sept. 27, 1964).
The defendants state that the brochure of the plaintiff represented that the subject Temco Unit was ££ completely safe”; ££ absolutely cuts investment, installation and operating costs ” and ££ ideally meets the needs of the specialized application in motels ”. The defendants contend that these statements are affirmations of fact and description of the goods and thus express warranties within the terms of section 2-313 of the Uniform Commercial Code. The court finds merit in this contention. However, the court does not agree with the further contention of the defendants that such representations must be considered to survive the disclaimer provisions of the written instrument entered into between the parties.
The official comment to section 2-313 of the Uniform Commercial Code acknowledges the difficulty of reconciling the application of the express warranty provisions arising under that section with the provisions relating to disclaimer set forth in section 2-316 of the Uniform Commercial Code. The official comments even indicate that absent other considerations a construction of survival of express warranty is to be preferred over construction giving effect to the provisions of disclaimer of express warranty. However, the same official comments clearly indicate that suggested preferential treatment is not absolute.
In Official Comment No. 4 it is stated: ££ This is not intended to mean that the parties, if they consciously desire, cannot make *1038 their own bargain as they wish ”. Similarly, in Comment No. 3 it is stated: “ Rather, any fact which is to take such affirmation, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact”. (See Official Comment, McKinney’s Cons. Laws of N. Y., Book 62%, Uniform Commercial Code, § 2-313, pp. 240, 241.)
Here, the instrument between the parties contained more than a mere disclaimer of express warranty and of implied warranty, other than of merchantability and fitness. There was an express provision that the written instrument contained the entire agreement between the parties. That broad general statement was immediately followed and amplified by particularization that “ there are no promises, terms, conditions, or warranties other than those contained herein ”. (See par. 10 of instrument dated June 12, 1969, quoted, infra.) The same instruments, in large bold print set forth on the front page, admonished the buyer not to sign the instrument before it was read. (See par. “ Notice to The Buyer” quoted above.) Finally, while subject to no legal requirement the disclaimer of express warranties and of implied warranties, other than of merchantability and fitness were mentioned by name and were set forth conspicuously in a separate space on the face sheet of the agreement. (See disclaimer of warranty clause, front page agreement dated June 12,1969, quoted, infra.)
Except for a detailed and specific reference to the provisions of the promotional brochure and to the alleged oral representations, it is impossible for this court to conceive of anything more the instrument could contain to indicate that the parties intended that there would be no survival or application of warranties either express or implied. In the opinion of this court all that could reasonably be expected to remove a consideration of warranty from the agreement was done.
From the pleadings, affidavits and accompanying exhibits, together with the examination before trial submitted, it is clear that the plaintiff seller was not the manufacturer of the heating and ventilating units. Its position was that of a corporate gas utility having a franchise for articles which used its product. Plaintiff’s motivation for the sale appears to have been the promotion of the use of gas in the defendants’ motel. The defendants did not purchase the units solely on the strength of the oral representations and promotional literature. They inspected a model of the Temeo Unit. Plaintiff’s obligation was limited to the delivery of the units at its warehouse in Jamestown. It was clearly understood at all times that the plaintiff *1039 was not required to install the units, nor to maintain or repair them. These were obligations of1 the defendant purchasers. It was the defendants’ architect that designed the location of the Temco units under the window and immediately below the drapes. It was the defendants who installed the draperies to the end that the hem of such draperies came to within an inch or less from the top of the Temco unit. An instructional pamphlet was delivered with each unit. Defendants acknowledge receipt of this pamphlet. That instructional pamphlet provided in part as follows: “ The unit may be installed underneath a window. However, it is important to keep drapes or curtains away from the top of the cabinet ”. The installation of the draperies made by the defendants was contrary to the printed instructions for installation.
Section 2-202 of the Uniform Commercial Code has codified with modifications thé parol evidence rule. That section now provides as follows:
“ 2-202. Final Written Expression: Parol or Extrinsic Evidence.
“ Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of1 any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:
“ (a) by course of dealing or usage of trade (Section 1-205) or by course of performance (Section 2-208); and
“ (b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.” (L. 1962, ch. 553, eff. Sept. 27,1964; italics added).
It is clear that a determination of whether or not a writing was intended as an exclusive statement of an agreement is a function of the court. The statute does not limit this determination to a trial of the issues. This court holds that such determination may properly be made upon a motion for summary judgment. (See Accord Farmers Coop. v. Levine, 36 A D 2d 656 [3d Dept., 1971]) “ the parol evidence rule is applied on a summary judgment motion as upon trial (West End Fed. Sav. & Loan Assn. v. Di Boise, 19 A D 2d 476; Ford v. Hahn, 269 App. Div. 436) ”.
In view of all of the foregoing this court now makes the determination that the instrument between the parties dated June 12, *1040 1969 contains no ambiguities and was intended as a complete and exclusive statement of the terms of the agreement between the parties. (Reference Uniform Commercial Code, § 2-202, subd. [b].) As a consequence, evidence offered by the defendants of alleged oral warranties or of warranties contained in a promotional brochure is properly excluded. With such exclusion there remains no substantial issue of fact requiring a trial. Accordingly, this court directs that judgment shall be entered in favor of the plaintiff for $25,292.60 with interest from August 1, 1970, together with attorneys’ fees in the amount of $5,048.52. The counterclaim of the defendants against the plaintiff is dismissed. No costs shall be allowed to either party on the motion.